```
           IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF IOWA
                     CENTRAL DIVISION

MERRILL LEE HOWARD,            )
                               )    NO. 4:07-cv-00449-JAJ-RAW
          Petitioner,          )
                               )
     vs.                       )    REPORT AND RECOMMENDATION
                               )    FOLLOWING
STATE OF IOWA,                 )    EVIDENTIARY HEARING
                               )
          Respondent.          )
```

Petitioner Merrill Lee Howard seeks a writ of habeas corpus under 28 U.S.C. § 2254. He is incarcerated as a result of a 2003 conviction for second degree murder. He pleaded guilty on December 4, 2002, was sentenced on January 30, 2003, did not appeal, filed a state postconviction action on June 29, 2004, procedendo for which was issued on July 11, 2007. He initiated the present habeas action on September 5, 2007, beyond the one-year federal habeas limitations period in 28 U.S.C. § 2244(d)(1)(A), (2). Respondent has moved to dismiss the petition as beyond time. Howard responds the limitations period should be equitably tolled because extraordinary circumstances outside his control prevented him from timely filing his petition, namely the failure of his attorney to file a direct appeal to the Iowa Supreme Court despite being asked by Howard to do so. On April 14, 2008 Judge Jarvey referred the matter to me for the conduct of an evidentiary hearing involving the sole issue of whether it is appropriate to equitably toll the one-year habeas limitations period.

On June 26, 2008 the Court held an evidentiary hearing using Iowa's ICN fiber optic network. The Court and counsel were at the U.S. Courthouse in Des Moines. Petitioner was at the Anamosa State Penitentiary where he is currently incarcerated. His former attorney, James Clements, was at the U.S. Courthouse in Davenport. There was a malfunction affecting the video portion of the connection to the Anamosa facility as a result of which the Court was unable to see petitioner during most of the hearing. Accordingly, the Court's credibility determinations below are not based on the demeanor or appearance of Mr. Howard or Mr. Clements, but rather on the general reasonableness of their testimony in light of other circumstances described in the record.

**I.**

The incident resulting in Howard's conviction was a drive-by shooting in Davenport late in the evening on July 21, 2002. The victim was a nine-year-old girl who, with her parents, was in a group of wedding guests gathered in the yard of a residence. According to respondent, Howard was one of seven individuals in two cars, most armed with handguns, looking for a man they were intent on shooting. The intended victim was spotted among the wedding guests. As the cars passed the guests gathered on the lawn, several of the occupants of the cars opened fire and the girl was killed. (*See* Plea Tr. at 14). Howard had given a videotaped interview to the police in which he admitted he was one

of the shooters. Mr. Clements testified it was likely the bullet that killed would be connected to the gun Howard had fired.

Howard was sixteen years old at the time of the shooting. He was prosecuted as an adult and charged with first degree murder, willful injury and terrorism. (*See* PCR Appeal App. at 51-52). Attorney Clements was appointed as substitute counsel for Howard after his initial attorney withdrew.

All the occupants of the two cars were charged. Numerous depositions were taken. Howard did not want to go to trial, the County Attorney offered a plea agreement under which Howard would plead guilty to the lesser-included offense of second degree murder and the other charges would be dismissed in return for his cooperation in giving testimony about the incident. Howard accepted the plea agreement and on December 4, 2002 pleaded guilty to second degree murder.

At the time of his plea, Howard was seventeen years of age. He had a tenth grade education. Howard testified he can "barely read" and he has problems writing. He must get others to write letters for him and then he copies the letter from what the other person writes out for him.

Murder in the second degree is a forcible felony under Iowa law carrying a term of imprisonment of fifty years. Iowa Code §§ 702.11, 707.3. As a result of the versions of Iowa Code §§ 902.12, 903A.2(1)(b) in effect at the time, a person convicted of

second degree murder was ineligible for release on parole or work release, and time off for good behavior was limited to fifteen percent of the sentence. *See State v. Iowa Dist. Ct.*, 616 N.W.2d 575, 577 (Iowa 2000).[1] As a consequence of the "eighty-five percent rule" Howard would be required to serve a minimum of eighty-five percent of the fifty-year sentence. The written plea agreement explained to Howard that he would be subject to serving at least eighty-five percent of his sentence. The state judge who presided at the guilty plea proceeding explained the eighty-five percent rule to Howard in plain terms. (Plea Tr. at 10). Clements told the court at the plea hearing that he had explained the eighty-five percent rule to Howard. (*Id.* at 16). The Court credits Clements' testimony that prior to the plea proceeding he explained to Howard that he would have to serve at least eighty-five percent of his fifty-year sentence.

As part of the plea colloquy Howard was told that if he wanted to challenge the plea proceeding he had to file a motion in arrest of judgment within forty-five days and not later than five days before the date set for sentencing, otherwise he would waive his right to challenge the plea proceeding. *See* Iowa R. Crim. P. 2.24(3)(a).

---

[1] Section 902.12 has since been retroactively liberalized to permit parole or work release after service of at least seventy percent of a sentence. Iowa Code § 902.12 (2007).

4

Howard did not ask Clements to file a motion in arrest of judgment or prior to the sentencing hearing complain about his plea. On January 30, 2003 Howard appeared for sentencing and received the fifty-year sentence. Howard testified he talked to Clements in the "holding tank" after sentencing, told him he did not think the sentence was right, and asked Clements to appeal the whole charge, "the time and the crime." Howard says Clements responded "yeah," indicating he would appeal, and then left. With respect to his sentence, Howard testified he thought he was to be given a "regular" fifty-year sentence and did not understand he would have to serve some forty-two years. He said Clements did not explain the eighty-five percent rule.[2]

Howard had thirty days to appeal. He was promptly sent to the classification facility at Oakdale where he stayed for twenty-three days. According to Howard, with the help of another inmate whose name he does not recall he sent a letter to Clements from Oakdale asking Clements to appeal. Howard says that after he was moved from Oakdale he continued to periodically send letters to Clements asking about the appeal. He does not recall how many letters he sent, kept no copies, and he did not attempt to contact Clements by telephone to ask about the appeal.

---

[2] The Court inquired at hearing about a transcript of the sentencing proceeding and was later advised it is likely no transcript was prepared.

Howard did not file his state postconviction action until June 29, 2004. He testified he waited because he thought his appeal was pending but eventually he decided to go ahead and file. Howard asked Clements to send him Clements' file on the case. Clements eventually sent him two boxes of material and testified he sent Howard everything in the file. None of the letters Howard says he sent about his appeal are in the file materials sent by Clements.

Clements practices primarily criminal defense law in Davenport, Iowa. He had been practicing for about ten years at the time he undertook Howard's representation, though he had little experience with murder cases. As noted, he testified he discussed the eighty-five percent rule with Howard before his plea and he believed he followed his usual practice of taking a few moments after the plea hearing to explain Howard's right to file a motion in arrest of judgment. He also testified he wrote a post-plea letter to Howard explaining the motion in arrest of judgment and the sentencing process. He testified the letter should be in the file he provided to Howard.

After the plea proceeding Howard was made available for a deposition in connection with the prosecution of the remaining defendants. The County Attorney did not think Howard was as forthcoming as he should have been and gave an indication he would seek to have the plea agreement set aside. Ultimately that did not happen and Howard was sentenced in conformity with the plea

agreement. Clements testified Howard was relieved when informed no effort would be made to set the plea agreement aside.

Clements did not recall if he talked to Howard in the holding tank after the sentencing, though that was possible. He did talk to Howard before sentencing, probably on the day of the sentencing proceeding. Clements testified he explained to Howard what his appeal rights were though he did not ask Howard if he wanted to appeal. Clements testified Howard did not ask him to appeal and denied receiving the letters Howard claimed to have sent concerning an appeal. He said any such letters would be in the file he sent to Howard. While Clements no longer has his file, his billing records indicate he received three pieces of correspondence from Howard after his sentencing. The first was in October 2003, the contents of which Clements does not recall. The second, received in December 2003, requested Clements' file. The third, in February 2004, was received shortly after Clements sent the file to Howard.

Clements did not think it would have been to Howard's advantage to appeal. If successful, the appeal would have exposed him to a first-degree murder prosecution.

**II.**

I conclude Clements' testimony is more credible and find that Howard did not ask Clements to appeal his conviction or sentence, and Clements had no reason to believe Howard wanted to

appeal. Clements' testimony is more reasonable when considered in context, there is no corroboration for Howard's testimony that he sent multiple letters to Clements concerning an appeal, and the record impeaches the reliability of Howard's testimony.

The evidence against Howard was substantial.[3] According to Clements, Howard did not want to go to trial. He had received the fifty-year sentence he had agreed to in a written plea agreement and as discussed with him at the plea proceeding. Between the plea and prior to sentencing Howard had communicated nothing to Clements about any dissatisfaction with the plea agreement. It seems unlikely that in the holding tank immediately following sentencing he would have made an abrupt about-face.

Had Howard said something to Clements in the holding tank about wanting to appeal, it would have come as a great surprise to Clements. Clements was and is an experienced criminal defense attorney. The ordinary reaction of any attorney in his position would been to discuss the matter with Howard. Clements would have been duty-bound to advise Howard that in the unlikely event of a successful appeal he might be exposed again to a first-degree murder prosecution, but also that in the absence of a motion in

---

[3] As Howard did not intend to shoot the child but someone else, presumably the first-degree murder prosecution would have been based on a theory of felony murder, one of the murder alternatives which had been charged. *See* Iowa Code § 707.2(2). (*See* PCR Appeal App. at 51-52).

arrest of judgment there was not much chance of success.[4] It is not believable that Clements would have simply responded "yeah," left, and thereafter done nothing.

By the same token, had Clements received a letter from Howard posted from the Oakdale facility asking Clements to appeal, any prudent attorney with the opportunity to appeal still open would have attempted to immediately communicate with Howard about his change of heart and/or taken the few simple steps required under Iowa law to initiate the appeal of the criminal conviction. Again, that Clements would simply ignore the Oakdale letter, or subsequent letters, does not seem believable.

Nothing corroborates Howard's testimony. The letters he said he wrote should be in the file Clements sent to Howard. They are not there. As it is improbable all of the multiple letters Howard said he sent to Clements would not have been received,[5] if Howard's testimony is accepted the Court would have to be prepared to find that Clements not only perjured himself, but to hide his neglect has destroyed or hidden evidence. The record does not support a finding such extraordinary misconduct occurred.

Howard did not keep copies of the letters he says he wrote to Clements about an appeal. Having, according to his

---

[4] "[F]ailure to move in arrest of judgment bars a direct appeal of [a] conviction." *State v. Straw*, 709 N.W.2d 128, 132 (Iowa 2006).

[5] Clements' address has not changed.

testimony, doggedly attempted to communicate with Clements and not receiving any responses over an extended period of time, it is reasonable to expect that Howard would have attempted to document his correspondence in some way by, for example, retaining one of the letters an inmate wrote out for him to copy. Howard did not do anything like this nor can he identify the inmate or inmates who assisted him.

Finally, Howard has made inconsistent statements about his involvement in the shooting and statements about his understanding of the sentence he would receive which are at odds with the record. He testified in substance that he was unaware that Iowa law at the time he pled guilty required him to serve eighty-five percent of his fifty-year sentence. The plea colloquy clearly indicates, however, that he was made aware of this. Indeed, later in his testimony Howard said he recalled the judge telling him he might get fifteen percent of the time off his fifty-year sentence for good behavior. In his state PCR hearing Howard testified his statements to the police and to the court at the time of his plea that he was involved in the shooting were not true. (PCR Appeal App. at 14-15, 21). The Court realizes Howard's prior statements and conduct may be explained in part by his youth, immaturity and educational limitations, but these things are not a recommendation for the veracity of his testimony about his interactions with Clements. To the contrary, together with the other circumstances

10

which cast doubt on Howard's testimony, they suggest the Court should be most reluctant to take at face value Howard's testimony concerning the alleged post-sentencing request that Clements appeal and the letters which are said to have followed.

### III.

In the circumstances of this case, equitable tolling of the habeas limitations period would be appropriate only if there was evidence of "extraordinary circumstances beyond [Howard's] control which made it impossible for him to file his petition on time." *Beery v. Ault*, 312 F.3d 948, 951 (8th Cir. 2002), *cert. denied*, 539 U.s. 933 (2003)(citing *Jihad v. Hvass*, 267 F.3d 803, 805 (8th Cir. 2001) and *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000)); *see Jackson v. Ault*, 452 F.3d 734, 736-37 (8th Cir. 2006), *cert. denied*, 127 S. Ct. 946 (2007). Ineffective assistance of counsel does not suffice. *Id.; see United States v. Martin*, 408 F.3d 1089, 1093 (8th Cir. 2005). The extraordinary circumstance alleged by Howard is attorney Clements' failure to file a notice of appeal as Howard had requested followed by Clements' failure to respond to Howard's numerous letters inquiring about the appeal. I have concluded Howard did not ask Clements to appeal his conviction or sentence either immediately after the sentencing proceeding or later in correspondence. Further, Clements had no reason to believe that Howard would have wanted to appeal so as to impose a duty on him to consult with Howard on the subject.

*See Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000); *Parsons v. United States*, 505 F.3d 797, 798 (8th Cir. 2007)(citing and quoting *Flores-Ortega*). In the absence of a showing of extraordinary circumstances which made it impossible for Howard to file his habeas petition on time, I RECOMMEND that the Court conclude it is not appropriate to apply the equitable tolling doctrine in this case.

IT IS ORDERED that the plaintiff have until **July 25, 2008** to file written objections to the Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1). *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990); *Wade for Robinson v. Callahan*, 976 F. Supp. 1269, 1276 (E.D. Mo. 1997). Any objections filed must identify the specific portions of the Report and Recommendation and relevant portions of the record to which the objections are made and must set forth the basis for such objections. *See* Fed. R. Civ. P. 72; *Thompson*, 897 F.2d at 357. Failure to timely file objections may constitute a waiver of plaintiff's right to appeal questions of fact. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994); *Halpin v. Shalala*, 999 F.2d 342, 345 & n.1, 346 (8th Cir. 1993); *Thompson*, 897 F.2d at 357.

IT IS SO ORDERED.

Dated this 3d day of July, 2008.

                                   _____
                                   ROSS A. WALTERS
                                   UNITED STATES MAGISTRATE JUDGE